Judge Madeleine M. Landrieu
11Ricardo M. Young, Jr. appeals his conviction of one count of being a felon in possession of a firearm and one count of possession of marijuana, and his sentence as a second felony offender. For the reasons that follow, we affirm.
STATEMENT OF THE CASE
On April 19, 2013, the State charged Mr. Young with one count of being a felon in possession of a firearm, a violation of La. R.S. 14:95.1, and one count of possession of marijuana (second offense), a violation of La. R.S. 40:966(D)(1). He pled not guilty at his arraignment. On October 2, 2013, the trial court conducted a preliminary hearing at which the judge found probable cause and denied the defendant’s motion to suppress the evidence, and the defendant waived his right to a jury trial.
After a bench trial on May 9, 2014, the court found Mr. Young guilty as charged on Count 1 and guilty of possession of marijuana (first offense) on Count 2. The trial court denied the defendant’s motions to reconsider sentence, for new trial and for post-verdict judgment of acquittal. The State filed a multiple bill of | ^information. On April 7, 2015, the defendant was adjudged a second felony offender and was sentenced to ten years imprisonment without benefit of probation, parole, or suspension of sentence. This appeal followed.
FACTS
Four law enforcement officers: DEA Special Agent Thomas G. Moffett, former NOPD Detective Chad Perez, Lieutenant Bryan Lampard, and Special Agent Thomas Ross of the Bureau of Alcohol, Tobacco and Firearms Department — testified as to the relevant facts; each of their accounts corroborated the others. Agent Moffett testified that on February 16, 2011, in an attempt to serve an arrest warrant on Mr. Young, he had established surveillance at an apartment complex located in the 4400 block of Congress Drive, the defendant’s last known address. After about forty-five minutes into the surveillance, Agent Mof-fett and another agent working with him saw Mr. Young’s car being driven into the complex parking lot. Det. Perez and other officers met Agent Moffett at the surveillance point near the defendant’s apartment complex. They proceeded to Mr. Young’s apartment, number 112. Det. Perez knocked on the apartment door, announcing his presence and purpose to affect the arrest warrant. The defendant refused to open the door or exit the apartment. Det. Perez breached the door and found Mr. Chaz Young (the defendant’s brother) in the apartment with the defendant. Both men were arrested, handcuffed and read their rights. Agent Moffett and Det. Perez observed in plain sight a bag of marijuana on the sofa, along with a digital scale and bong on an adjacent table. Det. Perez relocated to the First District police [.-¡station and prepared an application for a search warrant while the other officers remained on the scene. Once the warrant was issued, Det. Perez radioed the officers on the scene. In addition to the aforementioned items, the officers confiscated two baggies of marijuana and three hand-rolled mari *355 juana-laced cigars from the freezer, and one bottle -of Mannitol from a cabinet above the kitchen sink. They also found in the apartment dry cleaning tags and two Entergy bills (each bearing the defendant’s name and/or address at the Congress Drive complex), and discovered a fully loaded ,39-caliber military style rifle under the mattress in the bedroom. Finally, they searched the defendant and found $1,064.00 in currency in his left front pants pocket. At trial Agent Moffett identified photos of the defendant taken at the time of the search, plus one photo of the tattoo on the defendant’s abdomen, depicting a military assault rifle similar to the weapon confiscated during execution of the search warrant. The defendant was arrested pursuant to the federal arrest warrant and transported to Orleans Parish Jail.
As part of the investigation following the defendant’s arrest, Det. Perez obtained from the apartment complex manager a copy of the lease for apartment number 112. The lease, which was introduced into evidence, lists the defendant as the sole lessee and occupant of the apartment.
Ms. Raquel Webb, the defendant’s wife, testified on behalf of the defense. She said that she and the defendant have three children. According to her, at the time of the defendant’s arrest, the family was not living on Congress Street but on Morrison Road, where they had lived since February 2009. She said the | .defendant’s brother, Chaz Young, had a lease on apartment number 112 on Congress Street in 2010 or 2011. She reiterated that the defendant did not live in the apartment on Congress Street but lived with her and two of their children on Morrison Road. She explained that the defendant’s name was on the Congress Street lease on behalf of his brother, Chaz, to make sure the landlord knew the rent would be paid even if Chaz did not pay it. Ms. Webb acknowledged that she had put the defendant out of their Morrison Avenue home for a brief period on July 4, 2010, but said he had returned to the Morrison Avenue residence in August of 2010 (about eight months prior to the February, 2011 execution of- the search warrant in this case). She and the defendant had gotten married approximately four weeks prior to the trial.
Lt. Kevin Imbroguglio testified that he had assisted in the execution of an earlier search warrant for apartment number 112 on July 24, 2010. At that time, the police had gained entrance to the apartment by obtaining a key from the defendant. That search of the apartment did not turn up anything- belonging to- the defendant’s brother, Chaz Young. That sarhe night, officers went to Ms. Webb’s Morrison Avenue residence and were advised by her that the defendant was not living with her at that time. Ms. Webb gave officers permission to search her bedroom, which did not turn up anything belonging to the defendant.
ERRORS PATENT
A review for errors patent on the face of the record reveals none.[1]
^SUFFICIENCY OF THE EVIDENCE
The defendant argues the evidence is insufficient to support the conviction. When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Campbell, 2015-0017, *356 p. 7 (La.App. 4 Cir. 6/24/15), 171 So.3d 1176, 1182.
The standard for determining an insufficiency of evidence claim is well-settled. As the Louisiana Supreme Court noted in State v. Brown, 2003-0897, p. 22 (La. 4/12/05), 907 So.2d 1, 18, the standard is as follows:
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Neal, 2000-0674 (La. 6/29/01), 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La. 1984)).
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Neal, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. Id. (citing State v. Rosiere, 488 So.2d 965, 968 (La. 1986)).
It is also well settled that “[i]t is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence.” State v. Richards, 2011-0349, p. 9 (La.App. 4 Cir. 12/1/11), 78 So.3d 864, 869 (citing State v. Cummings, 95-1377 (La. 2/28/96), 668 So.2d 1132).
“The determination of credibility is a question of fact within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence,” Richards, 2011-0349 p. 9,78 So.2d at 869 (citing State v. Vessell, 450 So.2d 938, 943 (La.1984)). “Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness’ testimony, if believed by the fact finder, is sufficient to support a factual conclusion.” State v. Rapp, 2014-0633, pp. 6-7 (La.App. 4 Cir. 2/18/15), 161 So.3d 103, 108 (citing State v. Marshall, 2004-3139, p. 9 (La. 11/29/06), 943 So.2d 362, 369).
Mr. Young was convicted of violating La. R.S 14:95.1, relative to possession of a firearm by a convicted felon. La. R.S. 14:95.1 states, in pertinent part, that “[i]t shall be unlawful for any person who has been convicted [of an enumerated felony] to possess a firearm.” In order to convict a defendant of this crime, the State must prove beyond a reasonable doubt that the defendant: (1) possessed a firearm; (2) was previously convicted of an enumerated felony; (3) possessed the firearm within ten years of the previous conviction; (4) had the general intent to commit the crime. State v. Fields, 2012-0674, p. 6 (La.App. 4 Cir. 6/19/13), 120 So.3d 309, 315.
Actual possession of the firearm is not necessary to prove the possession element of La. R.S. 14:95.1; constructive possession is sufficient. Fields, 2012-0674, p. 6, 120 So.3d at 315. A person is in constructive possession of a firearm if |7the weapon is subject to his dominion and control. State v. Johnson, 2003-1228, p. 5 (La. 4/14/04), 870 So.2d 995, 998. A defendant’s dominion and control over a firearm constitutes constructive possession even if it is only temporary and even if the control is shared. Johnson, 2003-1228, p. 5, 870 So.2d at 999; State v. Major, 2008-0861, p. *357 6 (La.App. 4 Cir. 12/10/08), 1 So.3d 715, 720.
Mr. Young argues the State failed to establish his dominion and control of the gun seized, noting that neither La. R.S. 14:95.1 nor the jurisprudence interpreting it provides that a convicted felon cannot live in a residence where another member of that household possesses a firearm or that a convicted felon cannot “be around” a firearm.
In State v. Clements, 2012-1132 (La.App. 4 Cir. 3/13/13), 112 So.3d 306, this court stated:
The “mere presence of a defendant in the area of the contraband or other evidence seized alone does not prove that he exercised dominion and control over the evidence and therefore had it in his constructive possession.” The State must prove that the defendant was aware that a firearm was in his presence and that the defendant had the general intent to possess the weapon. Guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence. Whether the proof is sufficient to establish possession turns on the facts of each case.
Id., pp. 5-6, 112 So.3d at 311(eitations omitted). One of the factors to be considered in determining whether the defendant exercised dominion and control over the item sufficient to constitute constructive possession is the defendant’s proximity to the item. Id., p. 7, 112 So.3d at 311. Moreover, “[w]hen the perpetrator has not carried the firearm on his person, the State must show that the | «defendant’s intent amounted to an intent to possess rather than a mere acquiescence to the fact that there was a firearm in his presence.” State v. Haddad, 99-1272, p. 2, n. 2 (La. 2/29/00), 767 So.2d 682, 684. General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed consequences as reasonably certain to result from his act. La. R.S. 14:10(2).
In the instant case, the evidence the State presented at trial was sufficient to support the trial judge’s finding that Mr. Young, at a minimum, had constructive possession of the gun located under the mattress in the bedroom of the Congress Street apartment. The defendant was arrested after entering the apartment where the gun was found. The lease for the apartment listed the defendant as its sole lessee and occupant. In addition, dry cleaning tags attached to clothing in the apartment and two Entergy bills found there bore the defendant’s name and/or address at the Congress Street complex. Considering Det. Perez’s testimony as to the location of the weapon, the defendant’s proximity to the weapon and the events surrounding the discovery of the gun, as well as the documentary evidence in the apartment establishing dominion and control, a rational trier of fact could have found beyond a reasonable doubt that the State had met its burden of proving all the elements of the offense of possession of firearm by a convicted felon.
We therefore find no merit in this assignment of error.
I gWAIVER OF JURY
By this assignment, the defendant claims the record does not reflect that he made a knowing and valid waiver of his right to trial by jury.
Both the United States Constitution and the Louisiana Constitution guarantee an accused the right to a jury trial. U.S. Const, amend. VI; La. Const, art. I, § 17. If the punishment that may be imposed on a defendant exceeds six months confinement, the Louisiana Constitution provides that the defendant shall be tried by a jury; *358 however, in non-capital cases “a defendant may knowingly and intelligently waive his right to a trial by jury.” La. Const, art. I, § 17; State v. Biddy, 2013-0356, p. 19 (La.App. 4 Cir. 11/20/13), 129 So.3d 768, 780.
The waiver of the right to a jury trial cannot be presumed. State v. McCarroll, 337 So.2d 475, 480 (La.1976); State v. Santee, 2002-0693, p. 3 (La.App. 4 Cir. 12/4/02), 834 So.2d 533, 534. Such a waiver is valid only if the defendant acted knowingly and voluntarily. State v. Kahey, 436 So.2d 475, 486 (La.1983); Santee, 2002-0693, p. 3, 834 So.2d at 534. Determining whether the defendant’s jury trial waiver is knowing and intelligent does not require a Boykin-like colloquy. Santee, 2002-0693, p. 3, 834 So.2d at 535.
At the time Mr. Young was charged and arraigned, La. C.Cr.P. art. 780 provided, in pertinent part: (1) a defendant charged with a non-capital offense “may knowingly and intelligently waive a trial by jury and elect to be tried by the judge;” (2) “[a]t the time of arraignment, the defendant in such a case shall be informed by the court of his right to waive trial by jury;” (3) “[t]he defendant shall |inexercise his right to waive trial by jury in accordance with the time limits set forth in Article 521” (generally by motion filed within fifteen days after arraignment); and (4) b.ut, “with permission of the court, he may exercise his right to waive trial by jury at any time prior to commencement of trial.”[2]
However, Article 780 was amended between the time of Mr. Young’s arraignment and October 2, 2013, when he waived his right to trial by jury. The amended version of the article, effective June 17, 2013, provides, in pertinent part:
B. The defendant shall exercise his right to waive trial by jury in accordance with Article I, Section 17 of the Constitution of Louisiana. The waiver shall be by written motion filed in the district court not later than forty-five days prior to the date the case is set for trial. The motion shall be signed by the defendant and shall also be signed by defendant’s counsel unless the defendant has waived his right to counsel.
C. With the consent of the district attorney the defendant may waive trial by jury within forty-five days prior to the commencement of trial;
D. A waiver’ of trial by jury is irrevocable and cannot be withdrawn by the defendant.
The record contains no indication that Mr. Young filed a written motion to waive his right to trial by jury. Therefore, the trial court erred by not requiring compliance with Code of Criminal Procedure article 780. In the absence of such compliance, we must consider the facts regarding the defendant’s waiver to determine whether the trial court’s error was harmless. See, State v. Brundy, 2016-0263, 2015-1233 (La. App. 4 Cir. 8/24/16), 198 So.3d 1247 (Landrieu, J., concurring). In perfoi’ming this “harmless error” analysis, the jurisprudence regarding the validity of oral waivers prior to the effective date of the amendment of Article 780 is instructive. Id.
Inin State v. Phillips, 365 So.2d 1304 (La.1978), the Louisiana Supreme Court considered whether the defendant in that case was denied his constitutional right to a trial by jury. When the trial judge asked the defendant in Phillips to choose between a judge trial and a jury trial, the defendant’s attorney responded that the *359 defendant would waive his right to a jury trial. The defendant was sitting beside his attorney at the time. The defendant argued that his right to a trial by jury could only be waived by ■ him personally. The Supreme Court held that the defendant had not been denied his constitutional right to a jury trial. The Court found no error in the trial judge’s- determination that the defendant had waived his right to trial by jury, “especially in light of the fact that the judge had informed defendant not once, but twice, of his right to choose between a judge trial- and a jury trial, and that the defendant was shown to have had prior experience as an accused in the trial of a criminal prosecution.” Id. at 1309.
Similarly, this court has held that a defendant’s failure to object when his counsel informed the court that a bench trial had been chosen is to be construed against the defendant in determining the validity of the waiver made while he was present in court. See State v. Peters, 2010-0326, p. 9 (La.App. 4 Cir. 2/16/11), 60 So.3d 672, 678 (citing as examples State v. Santee, 2002-0693 at p. 4, 834 So.2d at 534-35, and State v. Wolfe, 98-0345, pp. 6-7 (La.App. 4 Cir. 4/21/99), 738 So.2d 1093,1097-98).
In the case before us, the record indicates that Mr. Young was represented by counsel and was advised of the right to a jury or bench trial at his arraignment. Although Mr. Young argues on appeal there is no evidence in the record demonstrating that his jury waiver was knowingly and intelligently made because |iathe judge faded to engage him in á legally sufficient colloquy, this court has held that a Boykin-like colloquy is not necessary. Santee, 2002-0693, p. 3, 834 So.2d at 535.
In this case, just as in Phillips, supra, there is no indication in the record that, when Mr. Young’s counsel announced his client’s choice of a bench trial, Mr. Young objected to that election. In fact, at the conclusion of the preliminary hearing, the judge instructed defense counsel to confer with Mr. Young concerning his choice of the mode of trial, which counsel did, and immediately thereafter reported to the court that the defendant had chosen a bench trial. The trial judge asked Mr. Young to confirm his choice. The preliminary hearing transcript reflects that Mr. Young then advised the court that his choice was to select a judge trial. Additionally, just prior to the start of .trial on May 8, 2014, Mr. Young’s counsel acknowledged that the defendant had previously elected to proceed via bench trial. Mr. Young made no objection to his counsel’s statement.
Based upon the record, we find that Mr. Young’s oral waiver of his right to trial by jury was knowingly and voluntarily made, and that the trial court’s error in failing to require a written waiver is therefore harmless.
'We find no merit in this assignment of error.
MOTIONS FOR NEW TRIAL AND POST-VERDICT JUDGMENT OF ACQUITTAL
By these assignments, Mr. Young contends the trial court erred by denying his motions for a new trial and post-verdict judgment of acquittal, respectively. He argues the State failed to prove he had the intent to possess the firearm and to exclude every reasonable hypothesis of innocence.
11sLa. C.Cr.P. art. 851 provides, in pertinent part:
Grounds for new trial
A. The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
*360 B.The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:
(1) The verdict is contrary to the law and the evidence.
La. C.Cr.P. art. 821 provides:
Motion for post-verdict judgment of acquittal
A. The defendant may move for a post-verdict judgment of acquittal following the verdict. A motion for a post-verdict judgment of acquittal must be made and disposed of before sentence.
B. A post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
C. If the court finds that the evidence, viewed in a light most favorable to the state, ■ supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post-verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
D. If a post-verdict judgment of acquittal is granted or if a verdict is modified, the state may seek review by invoking the supervisory jurisdiction of or by appealing to the appropriate appellate court.
E. If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post-verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
As we have determined that the verdict is not contrary to the law and evidence, which supports a finding of guilty when viewed in a light most favorable to the State, we find no merit to these assignments of error.
^MOTION FOR CONTINUANCE
In his final assignment, Mr. Young argues the trial court erred by denying his motion for continuance. He bases this argument on the fact that at beginning of trial, the State amended the bill of information with respect to the type of weapon he was alleged to have been in possession of. Originally, the bill stated “handgun.” The State amended the bill, scratching out the word “hand” to leave the reference to the weapon as simply “gun.”[3]
La. C.Cr.P. art. 487 provides, in pertinent part:
Defective indictment; amendment
A. An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty.
Before the trial begins the court may order an indictment amended with respect to a defect of substance. After the *361 trial begins a mistrial shall be ordered on the ground of a defect of substance.
If the defendant can show he has been prejudiced by the amendment of the charge against him, he is entitled to a continuance. See La, C.Cr.P. art. 489.[4] 1 ¶ (According to the comments to art. 489, the purpose of the continuance provided for in this article is to protect the defendant from surprise and prejudice which may result from amendment of the indictment or bill of information. Mr. Young argues the amendment prejudiced him in that it eliminated one of the defenses he sought to offer — that the weapon in this case was not a “handgun.” The record shows that, when the defense made this argument to the trial judge at the time the State amended the bill of information, the judge noted:
[Defense counsel], you knew that that was the gun that they were talking about, and the question of whether it is a handgun or not, I don’t know, you can put your hand on it just like you put it on any other gun, but that’s not spelled out. There is no definition of that. You can look in Black’s Law Dictionary it is probably going to say that a handgun is something that you hold by your hand. And, that’s the kind of gun .[the gun in this case] is. You hold it by your hand. It may be a lot different than a pistol, but [the State] didn’t put “pistol” in here. [The State] put “handgun.” The idea is that everybody is on notice as to the gun that it is.
For purposes of La. R.S. 14:95.1, possession of a weapon by a person convicted of certain felonies, sub-section D of the statute defines “firearm” as:
... any pistol, revolver, rifle, shotgun, machine gun, submachine gun, black powder weapon, or assault rifle which is designed to fire or is capable of firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive.
Considering that : 1) the primary purpose of a bill of information is to notify the defendant of the criminal charge and the evidence against him so that he can prepare a defense; 2) during his testimony at the October 2,2013, preliminary hearing in this matter, Det. Perez identified the firearm in this case as a Roman Arms 7.62 caliber assault style rifle, commonly known as an AK 47; and 3) for purposes of La. R.S. 14:95.1 the definition of “firearm” includes “assault riñe,” we conclude that Mr. | ¶ fiYoung has not demonstrated that he was prejudiced by the amendment of the term “handgun” to “gun” in the bill of information. Mr. Young was aware of the identity of the weapon he was alleged to have been in possession of at the time of the preliminary hearing, which occurred approximately six months prior to trial. Furthermore, his contention that he was prejudiced by the amendment of the bill of information because the amendment denied him the “defense” that an AK 47 assault rifle is not a “handgun,” is not persuasive. As the definition of “weapon” as used in La. R.S. 14:95.1 does not exclude handguns, but in *362 fact includes several types of guns that are handguns, it is not likely that such a defense would have succeeded.
For the foregoing reasons,' the trial court did not abuse its discretion by denying the defendant’s motion for continuance.
We find no merit in this assignment of error.
CONCLUSION
Accordingly, we affirm Mr. Young’s conviction and sentence.
AFFIRMED

. While the court did not impose a fine required by La. R.S. 14:95.1, the failure to do so is not error where the appellant was sentenced as a multiple offender. See: State v. Dickerson, 584 So.2d 1140 (La.1991); State v. Boyles, 2014-1126 (La.App. 4 Cir. 2/4/15), 157 So.3d 1170, writ den. 2015-0733 (La. 3/4/16), 187 So.3d 1007; State v. Nora, 2013-0892 (La.App. 4 Cir. 6/18/14), 143 So.3d 1237.

. Mr. Young was charged on April 19, 2013. He pled not guilty at his arraignment on April 23, 2013.

. During his testimony at the preliminary hearing in this matter, Det. Perez identified the fireárm as a Roman Arms 7.62 caliber assault style rifle, commonly known as an AK 47. In its opening statement at trial, the State identified the firearm in question as an AK 47 assault rifle.

. Art. 489 states:
Continuance where amendment prejudicial If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution. If it becomes necessary to discharge the original jury from further consideration of the case, the trial before a new jury will not constitute double jeopardy.